## WESTERN UNION TELEGRAPH COMPANY *v.* THE ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 1325. Argued February 15, 1888. — Decided March 19, 1888.

The privilege conferred upon telegraph companies by Rev. Stat. § 5263 carries with it no exemption from the ordinary burdens of taxation in a State within which they may own or operate lines of telegraph.

The laws of Massachusetts impose a tax upon the Western Union Telegraph Company on account of the property owned and used by it within that State, the value of which is to be ascertained by comparing the length of its lines in that State with the length of its entire lines; and such a tax is essentially an excise tax, and is not forbidden by the fact of the acceptance on the part of the company of the rights conferred on telegraph companies by Rev. Stat. § 5263, nor by the commerce clause of the Constitution.

The principles established by the statutes of Massachusetts for regulating the taxation of corporations doing business within its limits, whether domestic or foreign, do not appear to be unfair or unjust.

A state statute which authorizes an injunction to be issued to restrain a corporation organized under the laws of another State, whose taxes are in arrear, from prosecuting its business within the State until the taxes are paid, is void so far as it assumes to confer power upon a court to so restrain a telegraph company which has accepted the provisions of Rev. Stat. § 5263 from operating its lines over military and post roads of the United States.

IN EQUITY. The bill was filed by the Attorney General of the Commonwealth of Massachusetts, at the relation of the

Treasurer of that State, and on behalf of the Commonwealth, in the Supreme Judicial Court of that State on the 27th April, 1886. It averred that certain proceedings had been taken in accordance with law and under the Statutes of that State, to assess taxes in that State in the year 1885 upon the capital stock of the Western Union Telegraph Company, a corporation owning, controlling, and using, under lease, or otherwise, lines of telegraph within that Commonwealth for purposes of business or profit. The provisions in the Constitution and laws of Massachusetts which were relied upon are printed in the margin.[1] The nature of the proceeding, in the valuation of the

---

[1] 1. *Extract from the Constitution of Massachusetts.*

Part 2, Ch. 1, Sect. 1, Art. 4, of the Constitution gives the Legislature power "to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and persons resident, and estates lying within the said Commonwealth," and also "to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise and commodities whatsoever, brought into, produced, manufactured, or being within the same."

2. *Extracts from the Public Statutes of Massachusetts.*

"Chapter 13, Sect. 38. Every corporation chartered by the commonwealth, or organized under the general laws, for purposes of business or profit, having a capital stock divided into shares, excepting banks whose shares are otherwise taxable under this chapter, and except those specified in sections forty-three and forty-six, shall annually, between the first and the tenth day of May, return to the tax commissioner, under the oath of its treasurer, a complete list of its shareholders, with their places of residence, the number of shares belonging to each on the first day of May, the amount of the capital stock of the corporation, its place of business, the par value and market value of the shares on said first day of May. Such return shall, in the case of stock held as collateral security, state not only the name of the person holding the same, but also the name of the pledger and his residence. The returns shall also contain a statement in detail of the works, structures, real estate and machinery owned by said corporation and subject to local taxation within the commonwealth, and of the location and value thereof. Railroad and telegraph companies shall return the whole length of their lines, and the length of so much of their lines as is without the commonwealth; other corporations required to make a return under this section shall also return the amount, value, and location of all works, structures, real estate, and machinery owned by them and subject to local taxation without the commonwealth: *provided*, that nothing herein

property of the company fc ~ the purposes of the assessment of the tax are sufficiently stated in the Report of the Examiner *infra*.

---

contained shall exempt any corporation from making all returns required by its charter.

" SECT. 39.  The tax commissioner shall ascertain, from the returns or otherwise, the true market value of the shares of each corporation included in the provisions of the preceding section, and shall estimate therefrom the fair cash valuation of all of said shares constituting its capital stock on the first day of May next preceding, which shall be taken as the true value of its corporate franchise for the purposes of this chapter.  He shall also ascertain and determine the value and amount of all real estate and machinery owned by each corporation, and subject to local taxation, and of the deductions provided in the following section; and for this purpose he may take the amount or value at which such real estate and machinery are assessed at the place where the same are located as the true amount or value; but such local assessment shall not be conclusive of the true amount or value thereof.

" SECT. 40.  Every corporation embraced in the provisions of section thirty-eight shall annually pay a tax upon its corporate franchise at a valuation thereof equal to the aggregate value of the shares in its capital stock, as determined in the preceding section, after making the deductions provided for in this section, at a rate determined by an apportionment of the whole amount of money to be raised by taxation upon property in the commonwealth during the same current year, as returned by the assessors of the several cities and towns under section eighty-six of chapter eleven, upon the aggregate valuation of all the cities and towns for the preceding year, as returned under sections fifty-four and fifty-five of said chapter: *provided*, that in case the return from any city or town is not received prior to the twentieth day of August, the amount raised by taxation in said city or town the preceding year, as certified to the secretary of the commonwealth, may be adopted for the purpose of this determination; and *provided; further*, that the amount of tax assessed upon polls the preceding year, as certified to the secretary, may be taken as the amount of poll tax to be deducted from the whole amount to be raised by taxation, for the purpose of ascertaining the amount to be raised by taxation upon property. From the valuation, ascertained and determined as aforesaid, there shall be deducted, — *First*, in case of railroad and telegraph companies, whose lines extend beyond the limits of the commonwealth, such portion of the whole valuation of their capital stock, ascertained as aforesaid, as is proportional to the length of that part of their line lying without the commonwealth, and also an amount equal to the value, as determined by the tax commissioner, of their real estate and machinery located and subject to local taxation within the commonwealth: *second*, in case of other corporations, included in section thirty-eight of this chapter, an amount equal to the value,

The bill averred that the taxes had not been paid, and were still due and owing to the Commonwealth, and prayed the

---

as determined by the tax commissioner, of their real estate and machinery, subject to local taxation, wherever situated: *provided*, that, whenever the charter of a corporation provides a different method of ascertaining the valuation of its corporate franchise for the purposes of this chapter, the same shall be ascertained in the method provided in such charter."

"SECT. 42. Every corporation or association chartered or organized elsewhere, which owns, or controls and uses, under lease or otherwise, a line of telegraph within this commonwealth, shall make all the returns prescribed in section thirty-eight to be made by telegraph companies within the commonwealth, excepting the list of its shareholders; and shall annually pay a tax at the same rate, and to be ascertained and determined in the same manner as is provided in section forty; and all telegraph lines within the commonwealth controlled and used by such corporation or association, shall, for the purposes of this chapter, be taken and considered as part of its own lines."

"SECT. 53. The tax commissioner shall, as soon as may be after the first Monday in August in each year, notify the treasurer of each corporation, company, copartnership, or association liable thereto, of the amount of its tax under sections twenty-five, forty, forty-two, forty-five, forty-seven, fifty, and fifty-two, to become due and payable to the treasurer of the commonwealth within thirty days from the date of such notice: *provided*, that it shall not be due and payable earlier than the first day of November. Such notice shall also state that within ten days after the date thereof the said corporation, company, copartnership, or association may apply for a correction of said tax, and be heard thereon before the board of appeal hereinafter established.

"SECT. 54. Any corporation, company, copartnership, or association taxable under the provisions of sections forty, forty-two, forty-three, forty-five, forty-seven, fifty, and fifty-two, neglecting to make the returns required by this chapter, or refusing or neglecting, when required thereto, to submit to the examinations provided for therein, shall forfeit two per cent upon the par value of its capital stock; all which penalties may be recovered by an action of tort, brought in the name of the commonwealth, either in the county of Suffolk or in the county where the corporation is located. If any corporation, company, copartnership, or association fails to pay the taxes required to be paid to the treasurer of the commonwealth under the provisions of said sections forty, forty-two, forty-three, forty-five, forty-seven, fifty, fifty-one, and fifty-two, he may forthwith commence an action of contract in his own name, as treasurer, for the recovery of the same, with interest at the rate of twelve per cent per annum until the same are paid. All penalties under this section, and under sections seven, forty-seven, fifty, and fifty-two, may also be enforced, and all taxes under said sections forty, forty-two, forty-three, forty-five, forty-seven, fifty, fifty-one, and fifty-two,

court " to order and decree that said sum due for taxes as aforesaid shall be paid to said Commonwealth by the said cor-

---

may also be collected by information brought in the supreme judicial court at the relation of the treasurer of the commonwealth, and upon such information the court may issue an injunction restraining the further prosecution of the business of the corporation, company, copartnership, or association, until all such taxes due or penalties incurred shall be paid, with interest at the rate aforesaid, and costs. In any proceeding under this section the certificate of the tax commissioner or his deputy shall be competent evidence of all determinations made and notices given by him, and of all values, amounts, and other facts required to be fixed or ascertained by him under this chapter."

" SECT. 61. Any party aggrieved by the decision of the tax commissioner arising under the provisions of sections twenty-five to fifty-eight inclusive, excepting corporations named in section forty-six, may apply to the board of appeal constituted under the provisions of the following section for a correction of the same.

" SECT. 62. The treasurer and the auditor of the commonwealth, together with one member of the council to be named by the governor, shall constitute a board of appeal, to which board any party aggrieved by a decision of the tax commissioner upon any matter arising under this chapter, from his decision upon which an appeal is given, may apply within ten days after notice of such decision for a correction of the same. Upon such appeal said board shall, as soon as may be, give a hearing to such party, and shall thereupon decide the matter in question, and notify the tax commissioner and the party appealing; and such decision shall be final and conclusive as to the rights of the parties affected, although payments may have been made as required by the decision of the tax commissioner appealed from. Any over-payment of tax, determined by the decision of said board of appeal, shall be reimbursed from the treasury of the commonwealth."

" CHAPTER 109, SECTION 1. Every company incorporated for the transmission of intelligence by electricity shall possess the powers and privileges, and be subject to the duties, restrictions, and liabilities, prescribed in this chapter.

" SECT. 2. Each company may, under the provisions of the following section, construct lines of electric telegraph upon and along the highways and public roads, and across any waters within the commonwealth, by the erection of the posts, piers, abutments, and other fixtures (except bridges) necessary to sustain the wires of its lines; but shall not incommode the public use of highways or public roads, nor endanger or interrupt the navigation of any waters.

" SECT. 3. The mayor and aldermen or selectmen of a place through which the lines of a company are to pass shall give the company a writing specifying where the posts may be located, the kind of posts, and the height at which and the places where the wires may run. After the erection of

poration, with interest thereon, together with the costs of this information, and to grant unto your informant a writ of injunction, issuing out of and under the seal of this honorable court, to be directed to the said corporation and its officers, agents, and servants, commanding them and each of them absolutely to desist and refrain from the further prosecution of the business of said corporation until said sums due to the said Commonwealth as aforesaid for taxes as aforesaid shall have been fully paid, with interest and costs," and for further and other relief.

On motion of the defendant the cause was, on May 13, 1886, removed to the Circuit Court of the United States, and on the 29th day of the same May the answer of the defendant was filed in that court.

The answer set forth that the defendant was a corporation organized in the State of New York, and under the laws of that State; that it owned, controlled, and used many lines of telegraph in various parts of the United States, and in the State of Massachusetts, largely in that State over and along the post roads of the United States which had been declared to be such and over, under, and across navigable waters of the United States in or adjoining that State, and that on the 5th of June, 1867, it had accepted the provisions and obligations of the act of July 24, 1866, 14 Stat. 221, c. 230 [now Rev. Stat. § 5263];[1] that thereby it became entitled to construct and maintain its lines over the post roads and over, under, and across the navigable waters of the United States, and became bound to transmit the telegrams of the United States over its lines at rates to be fixed by the Postmaster General, and that no state legislation could prevent its occupation of post roads for that purpose; that its lines extend to and from Massachusetts to other States, and to Washington, and connect with the lines of other companies doing business

the lines, having first given the company or its agents opportunity to be heard, they may direct any alteration in the location or erection of the posts, piers, or abutments, and in the height of the wires. Such specifications and decisions shall be recorded in the records of the city or town."

[1] See *infra*, page 547, for this statute.

in this country and outside of the United States and beyond the seas; that while it was operating its lines in Massachusetts it was called upon to make returns of its capital stock, &c. to the tax commissioner of the State according to the provisions of §§ 38, 39, 40, 41, and 42 of c. 13 of the Public Statutes of the State, and made a return as follows:

"WESTERN UNION TELEGRAPH COMPANY.

"TREASURER'S OFFICE, NEW YORK, *June* 25, 1885.

"Hon. Daniel A. Gleason, tax commissioner of the Commonwealth of Massachusetts.

"SIR: I, Roswell H. Rochester, treasurer of the Western Union Telegraph Company, hereby return that on the first day of May, 1885, said corporation held its principal place of business at the city of New York.

"Its capital stock was . . . . . . . . . $80,000,000 00
The whole number of its shares was 800,000.
The par value of each share was . . . . .100 00.
The market value of each share was . . . 59 37½
The value of the real estate owned by the corporation without the State of Massachusetts was . . . . . . . . . . . . . 3,058,933,82
The value of the real estate owned by the corporation within the State of Massachusetts was nothing.
The total number of miles of line owned or leased was 146,052.60.
Of which the number of miles (not on post roads of the United States and excluding 2,334.55 miles which were on post roads of the United States) within the State of Massachusetts was 498.50.
Total property, 800,000 shares, at $59.37½ per share . . . . . . . . . . . . 47,500,000 00
This includes —
Real estate . . . . . . . . . . . . 3,058,933 82
Two hundred and nine three-fourth shares held by this company unissued, at $59.37½ 12,453 90

Stocks in other companies outside of our sys-
tem, not included in above statement of
miles of line . . . . . . . . . . .      $8,773,622 70
Balance value of 146,052.60 miles of line  .   35,654,989 58
Value, at same rate, of said 498.50 miles as
the valuation of the corporate franchise of
said company for taxation under the laws
of Massachusetts . . . . . . . . . .         121,695 97

" This return includes the lines and property of the
American Union Telegraph Company, the Franklin
Telegraph Company, the Mutual Union Telegraph Company,
and the Gold and Stock Telegraph Company as part of the
Western Union lines.

" Respectfully yours,
R. H. ROCHESTER, *Treasurer.*"

The answer then set forth the action of the tax commis-
sioner upon this return and respecting the valuation of the
property of the company for the purposes of taxation[1]; and
continued : .

" And this respondent does not deny but admits that its
property in said State of Massachusetts is subject to taxation
the same as other property, and that it may be taxed in a
proper way thereon, yet it respectfully submits and avers that
this respondent does not derive its existence from the laws of
said State, or derive the right to have and exercise its said
franchises, rights, and privileges from said State, or hold them
subject to its control, and that said franchise tax is clearly not
a tax on its property in any legal sense, and cannot be held
valid as such ; that it is in the nature of an excise on the
exercise of all the franchises, rights, and privileges enjoyed by
this respondent in the conduct of its business, and a tax on its
operations in such exercise ; that, while it is claimed by the
officers of said State and by said attorney general that the
laws imposing said tax are founded on the alleged right of
said State to refuse to this respondent the right or permission

---

[1] For these proceedings see the Report of the Examiner *infra.*  pp. 539, 542.

to transact its business or exercise its functions, franchises, rights, and privileges within said State, except for such price and on such terms and conditions, including the payment of such taxes as said State may see fit to prescribe and assess, and to compel the performance of, and to exclude this respondent from such transaction or exercise if the same are not performed and obeyed;

"Yet this respondent avers that said franchise tax has not and cannot have this or any legal foundation, and that it includes and is a tax or assessment on the rights, privileges, and franchises granted and secured to this respondent by the United States by the said act of Congress, and on the use thereof by this respondent as an instrument of commerce and as a government agent for the transmission of public business by means thereof, and on its operation in said State, which said State cannot limit, control, refuse, or tax.

"That even if said tax could in any form be so properly levied and assessed on the use of such rights and privileges for other purposes, which this respondent denies, it is not only impossible in this case to indicate or designate the portion of the burden of said franchise tax on said use as an instrument of commerce and as a government agent or on any use for other purposes, but that the mode of valuation thereof specifically prescribed by said act does in terms include and designate as a subject of taxation the franchise exercised on that portion of this respondent's lines constructed, maintained, and used in the exercise and enjoyment of said rights and privileges, and that the said tax bears upon the whole machine without distinction and indistinguishably as well upon the faculty of receiving and transmitting the messages of the government of said United States as on that of receiving and transmitting messages of individuals, and as well upon the faculty of receiving and transmitting through said State messages sent and received in and for the purposes of foreign and interstate commerce, as upon that of receiving and transmitting other messages wholly within said State.

"And this respondent further avers that if said franchise tax could in form be legally so levied and assessed as to oper-

ate upon only something legally subject to taxation by said State by any mode of estimate or valuation resembling that prescribed by said laws, based upon a valuation of its shares, deducting real estate locally taxed in said State, it would be and is unjust and not proportional not to deduct from said valuation the amount of real estate owned by and subject to local taxation and actually taxed out of said State, both because the laws of said State allow such deduction from the valuation under said laws for like taxation of the franchises of other corporations organized or chartered within and doing business within and without said State, and because otherwise said State would assume and does assume in effect to tax and assess real estate situated in and subject to taxation and actually taxed by other States and jurisdictions."

The plaintiff filed a replication to this answer; whereupon the cause was referred to Francis S. Fiske, Esq., "as Examiner, to take and report the evidence of both parties therein, and such questions of law arising thereon as either party shall desire." The Examiner's report was filed May 4, 1887, as follows:

"I, Francis S. Fiske, having been appointed by the court a special examiner in the above-named case, report —

"That the information was filed in the Supreme Judicial Court of the State April 27, 1886, and removed to this court by the defendant; that the defendant is a telegraph company organized under the laws of the State of New York before the passage of the act of the Congress of the United States of July twenty-fourth, eighteen hundred and sixty-six, entitled 'An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military, and other purposes' (Rev. Stat. § 5263, *et seq.*), and is a corporation organized for purposes of business and profit, having a capital stock divided into shares, which filed with the Postmaster-General of the United States its written acceptance of the restrictions and obligations required by law in accordance with said act on or about the twelfth day of June, 1867, and has ever since been in existence and operation.

"That on and before and since the first day of May, 1885, it has owned, controlled, and used, under lease or otherwise, a line or lines of telegraph within said Commonwealth as part of a system of 146,052 and $\frac{60}{100}$ miles of line extending throughout the United States, part of Canada, and to Cuba and England by submarine ocean cable, connecting with lines owned and established by the government of the United States for public purposes.

"That on the sixteenth day of September, in said year 1885, after notice had been given to said Commonwealth of said filing and of other matters mentioned in the notice hereto appended, as below stated, and a return made by said company under section 42 of chapter 13 of the Public Statutes of said Commonwealth, copies of which notice and return are appended, [see pp. 536, 537, *supra*,] the tax commissioner of said Commonwealth, in the manner required by its laws, estimated the fair cash valuation of all the shares constituting the capital stock of said corporation on said first day of May at $47,500,000, and allowed as credits to said corporation out of said $47,500,000 the sum or value of $8,786,076.

| | |
|---|---|
| For 209¾ shares held by the company unissued, at $59.37½ . . . . . . . . . . . . . . . | $12,453 90 |
| For stock in other companies outside of its system not included in above statement of miles of line. . . . . . . . . . . . . . . . | 8,773,622 70 |
| | $8,786,076 60 |

"And determined the total number (or whole length) of the miles of line of said defendant to be 146,052.60 as aforesaid and 143,219.55 miles thereof, which included said cables, to be beyond the limits of said Commonwealth.

"That the rate determined under the fortieth section of said thirteenth chapter of said Public Statutes for the taxation of the corporate franchises therein mentioned was, in and for the year 1885, $14.14 for each $1000 of valuation.

."That said commissioner, being of opinion that the valuation of the corporate franchise of said defendant for taxation

by said Commonwealth was to be ascertained by deducting
from said . . . . . . . . . . . . $47,500,000 00
The said . . . . . . . . . . . . . . . . 8,786,076 00

Thus leaving . . . . . . . . . . . . . $38,713,924 00
And then taking as the total number of
said line or lines . . . . . . . . . . . 146,052.60
And as the number thereof in said Common-
wealth . . . . . . . . . . . . . . . . 2,833.05,
without regard to the question whether any thereof were
or were not on post roads, declared such by law, or navigable
streams or waters of the United States, considered that the
valuation of the corporate franchise of said defendant subject
to be taxed in said Commonwealth at said rate was $\frac{2,833.05}{140,052.60}$ of
said $38,713,924, or in all ($750,952) seven hundred and fifty
thousand nine hundred and fifty-two dollars, and assessed a
tax thereon of ($10,618.46) ten thousand six hundred and
eighteen and $\frac{4.6}{100}$ dollars to said company.

" That in fact more than 2334.55 miles of said line within
said Commonwealth, part of said 2833.05 miles, were on, over,
under, or across said post roads — that is to say, railroads or
highways made by law such post roads — or such streams or
waters.

" That before and during said year and since said defendant
has continually transmitted over said lines on said post roads,
streams, or waters between the several departments of the
United States government and their officers and agents or
as provided by § 221 of the Revised Statutes of the United
States, at rates fixed by the Postmaster-General, as required
by said act of Congress or title LXV of said section, tele-
graphic communications and messages for the government of
the United States, including those for the signal service relat-
ing to the weather, storms, etc., and also commercial and busi-
ness messages for purposes of foreign and interstate commerce
from and to, into, through, and over and between said State
of Massachusetts and all the other States and Territories of
the United States, the city of Washington and the District of
Columbia, and to and from foreign countries by ocean sub-

marine cables both for said government and for many private individuals and corporations resident and located as well out of as in said State.

"That it is impossible for said company to determine what portion of any sums received by it was received for services performed in said State in the transmission through the same or any part thereof of messages or communications received or delivered out of it or not on lines over said post roads, streams, or waters, but that the largest part, or approximately seventy per cent, of said sums was for messages received or delivered out of said State.

"That said defendant, on said first day of May, 1885, owned a large amount of real estate located and subject to local taxation out of said State of Massachusetts, on which there was assessed and paid by it a large amount (over $48,000) of taxes, besides other taxes.

"That the amount or value of said real estate was not clearly shown, but it was shown that the cost of land and buildings thereon owned by the defendant and of buildings so owned on land not so owned out of said State was over $3,000,000; and it was agreed by the said parties that if it appeared and became material upon any final decision in this case to fix the amount or value of said real estate, or the taxes thereon, or the amount received for any class of messages, and it was not agreed upon by them, the same should be determined on further hearing by the examiner.

"That no deduction or allowance was made in assessing said tax or in ascertaining the valuation of said franchise for taxation as aforesaid on account of said real estate, land, or buildings, or the taxes paid thereon, or for anything not above specifically stated.

"That notice was duly given to said defendant of said tax, and demand made therefor as required by said chapter, but said defendant protested against said assessment and tax and declined to pay the same; whereupon this information was filed."

The cause was heard on these pleadings and upon the report of the Examiner, and the court on the 28th November, 1887, made a final decree therein:

" That the facts set forth in the examiner's report filed in this cause are true.

" That on those facts the method of valuation, assessment, and taxation provided by the laws of Massachusetts upon the franchise of the defendant corporation is not, as was claimed and contended by said defendant, illegal and unconstitutional under the constitution and laws either of the State of Massachusetts or the United States — that is to say, either under the Constitution of the United States, Article I, section 8; Article III, section 2; Article VI; Amendments V and XIV; Revised Statutes of the United States, sections 5263, 5264, 5265, 5266, 5267, 5268, 5269, including a revision and consolidation of the act of July 24, 1866, chapter 230, accepted by the defendant before the revision of section 221; or under the constitution of said State, part I, art. X; part II, chapter I, section IV; or chapter 13 of its Public Statutes, but was and is in conformity with and authorized by said constitutions and laws, and that therefore the sum claimed by the plaintiff to be due for taxes, to wit, $10,618.46, be paid to said State by said corporation, with interest thereon, and that an injunction shall be issued out of and under the seal of this court, directed to said corporation and its officers, agents, and servants, commanding them and each of them absolutely to desist and refrain from the further prosecution of the business of said corporation until said sums due to the said Commonwealth as aforesaid for taxes as aforesaid shall have been fully paid, with interest and costs, unless the said sum is paid by said defendant as aforesaid within thirty days from the entry hereof."

From this decree the defendant appealed.

*Mr. George S. Hale,* (with whom were *Mr. Charles W. Wells* and *Mr. Willard Brown* on the brief).

I. Telegraph companies, which have accepted the act of Congress, are, as to government business, government agencies, and so far as a state tax on a company is on, or affects, the means employed by the government of the United States to exercise its constitutional powers, it is void. *Western Union*

*Telegraph Co.* v. *Texas,* 105 U. S. 460; *Osborn* v. *Bank of the United States,* 9 Wheat. 738; *Union Pacific Railroad* v. *Peniston,* 18 Wall. 5; *McCulloch* v. *Maryland,* 4 Wheat. 316; *Bank of Commerce* v. *New York,* 2 Black, 620; *Weston* v. *Charleston,* 2 Pet. 449; *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.,* 96 U. S. 1; *Mayor* v. *Charlton,* 36 Georgia, 460; *Wabash &c. Railway Co.* v. *Illinois,* 118 U. S. 557; *Fargo* v. *Michigan,* 121 U. S. 230; *Pickard* v. *Pullman Southern Car Co.,* 117 U. S. 34; *Manufacturers' Ins. Co.* v. *Loud,* 99 Mass. 146; *Hamilton Manufacturing Co.* v. *Massachusetts,* 6 Wall. 632; *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Portland Bank* v. *Apthorp,* 12 Mass. 252; *Commonwealth* v. *People's Five Cent Savings Bank,* 5 Allen, 428; *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Attorney General* v. *Bay State Mining Co.,* 99 Mass. 148; *Gleason* v. *McKay,* 134 Mass. 419; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. 326; *People* v. *Weaver,* 100 U. S. 539; *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489.

II. The omission to deduct from the total valuation the real estate located and subject to local taxation in other States, renders the tax excessive and invalid. *The Delaware Railroad Tax,* 18 Wall. 206; *Santa Clara County* v. *Southern Pacific Railroad,* 118 U. S. 394; *Libby* v. *Burnham,* 15 Mass. 144; *Stetson* v. *Kempton* 13 Mass. 272.

*Mr. Andrew J. Waterman,* Attorney General of the Commonwealth of Massachusetts, and *Mr. Henry C. Bliss,* Assistant Attorney General of that State, cited: *Portland Bank* v. *Apthorp,* 12 Mass. 252; *Commonwealth* v. *Savings Bank,* 5 Allen, 428; *Commonwealth* v. *Hamilton Manuf. Co.;* 12 Allen, 298, 305, 309; *Queen* v. *Arnaud,* 9 Q. B. 806, 817; *Utica* v. *Churchill,* 33 N. Y. 161, 237; *Van Allen* v. *Assessors,* 3 Wall. 573; *Attorney General* v. *Bay State Mining Co.,* 99 Mass. 148; *Bank of Commerce* v. *New York,* 2 Black, 620, 630; *Delaware Railroad Tax Case,* 18 Wall. 206, 225; *State Tax on Railway Gross Receipts,* 15 Wall. 284, 293; *Wabash &c. Railroad* v. *Illinois,* 118 U. S. 557, 594; *Sherlock*

*r. Alling*, 93 U. S. 99; *Munn* v. *Illinois*, 94 U. S. 113; *Chicago, Burlington &c. Railroad* v. *Iowa*, 94 U. S. 155; *Paul* v. *Virginia*, 8 Wall. 168; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 209; *Railroad Co.* v. *Peniston*, 18 Wall. 5, 34; *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493, 495; *Woodruff* v. *Parham*, 8 Wall. 123; *Manufacturers' Ins. Co.* v. *Loud*, 99 Mass. 146; *Oliver* v. *Washington Mills*, 11 Allen, 268, 279; *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632, 639; *Dickey* v. *Turnpike Road Co.*, 7 Dana, 113; *Thomson* v. *Pacific Railroad Company*, 9 Wall. 579, 590; *Fargo* v. *Michigan*, 121 U. S. 230; *Cooley* v. *Philadelphia*, 12 How. 299; *Ex parte McNeil*, 13 Wall. 236; *Osborne* v. *Mobile*, 16 Wall. 479, 481; *McCulloch* v. *Maryland*, 4 Wheat. 316, 429; *Dwight* v. *Boston*, 12 Allen, 316; *S. C.* 90 Am. Dec. 149; *Railroad Company* v. *Fuller*, 17 Wall. 560, 568.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the District of Massachusetts.

The action was commenced in the Supreme Judicial Court of Massachusetts, sitting in equity, by an information on behalf of the Commonwealth, by its Attorney General, at the relation of the treasurer thereof, Alanson W. Beard. It was afterwards removed, upon motion of the defendant, the Western Union Telegraph Company, into the Circuit Court of the United States. The object of the information was to enforce the collection of a tax levied by the proper authorities of the State upon the telegraph company, and to enjoin it from the further operation of its telegraph lines within the territorial limits of the Commonwealth until that tax was paid.

The defendant company is a corporation organized under the laws of the State of New York, having its capital stock divided into shares. The tax assessed by the treasurer of the Commonwealth of Massachusetts was based upon an estimate of $750,952 as the taxable value of the shares of the corporation apportioned to that State, the rate of taxation having

been determined for that year, 1885, at $14.14 for and upon each $1000 of valuation. The mode by which this taxable valuation was arrived at was this : The treasurer ascertained from the officers of the telegraph company that the valuation of its entire capital stock was $47,500,000, from which were deducted the credits proper to be allowed in determining the assessable value, leaving $38,713,924 as the total valuation of said stock liable to taxation. It was then ascertained that the total number of miles of line of said corporation in all the States and Territories of this country was 146,052.60, of which 143,219.55 were without the limits of the Commonwealth of Massachusetts, leaving 2833.05 miles within its boundaries. Taking these figures, the treasurer of the State assessed the value of that portion of the capital stock of this company which, under this calculation, would fall within the Commonwealth of Massachusetts, at the sum of $750,952. The amount thus arrived at, at the rate of $14.14 upon each $1000 of valuation, produced the sum of $10,618.46 as the amount of the tax claimed to be due and payable to the treasurer of said Commonwealth by that corporation. This sum was demanded of the telegraph company, but it refused to pay the same.

The answer of the defendant corporation set up that of its 2833.05 miles of line within the State of Massachusetts more than 2334.55 miles were over, under, or across post-roads, made such by the United States, leaving only 498.50 miles not over or along such post-roads, on which the company offered to pay the proportion of the tax assessed according to mileage by the state authorities.

The main ground on which the telegraph company resisted the payment of the tax alleged to be due, and on which probably the case was removed from the state court into the Circuit Court of the United States, is that it is a violation of the rights conferred on the company by the act of July 24, 1866, now Title LXV, §§ 5263 to 5269 of the Revised Statutes. The defendant alleges that it had accepted the provisions of that law, and filed a notification of such acceptance with the Postmaster General of the United States June 8, 1867. The argument is, therefore, that by virtue of § 5263 the company has a

right to exercise its functions of telegraphing over so much of its lines as is connected with the military and post-roads of the United States which have been declared to be such by law without being subject to taxation therefor by the state authorities. That section reads as follows:

"SEC. 5263. Any telegraph company now organized, or which may hereafter be organized under the laws of any State, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post-roads."

It is urged that this section, upon its acceptance by this corporation or any of like character, confers a right to do the business of telegraphing which is transacted over the lines so constructed over or along such post-roads, without liability to taxation by the State. The argument is very much pressed that it is a tax upon the franchise of the company, which franchise being derived from the United States by virtue of the statute above recited cannot be taxed by a State, and counsel for appellant occasionally speak of the tax authorized by the law of Massachusetts upon this as well as all other corporations doing business within its territory, whether organized under its laws or not, as a tax upon their franchises. But by whatever name it may be called, as described in the laws of Massachusetts, it is essentially an excise upon the capital of the corporation. The laws of that Commonwealth attempt to ascertain the just amount which any corporation engaged in business within its limits shall pay as a contribution to the support of its government upon the amount and value of the capital so employed by it therein.

The telegraph company, which is the defendant here, derived its franchise to be a corporation and to exercise the func-

tion of telegraphing from the State of New York. It owes its existence, its capacity to contract, its right to sue and be sued, and to exercise the business of telegraphy, to the laws of the State under which it is organized. But the privilege of running the lines of its wires "through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States, . . . and over, under, or across the navigable streams or waters of the United States," is granted to it by the act of Congress. This, however, is merely a permissive statute, and there is no expression in it which implies that this permission to extend its lines along roads not built or owned by the United States, or over and under navigable streams, or over bridges not built or owned by the Federal government, carries with it any exemption from the ordinary burdens of taxation.

While the State could not interfere by any specific statute to prevent a corporation from placing its lines along these post-roads, or stop the use of them after they were placed there, nevertheless the company receiving the benefit of the laws of the State for the protection of its property and its rights is liable to be taxed upon its real or personal property as any other person would be. It never could have been intended by the Congress of the United States, in conferring upon a corporation of one State the authority to enter the territory of any other State and erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the State into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support.

In the case of *Telegraph Company* v. *Texas*, 105 U. S. 460, this question was very fully considered, and while a tax imposed upon every telegram passing over its lines, whether entirely within the State or coming from without its limits, or going from the State out of it, was held to be void so far as related to messages passing through more than one State, as an interference with or a regulation of commerce and with the act of Congress we have just been considering, it was distinctly pointed out that if it could be ascertained what tele-

grams were confined wholly within the State a tax on those might be imposed by it.

In that case the Chief Justice, delivering the opinion of the court, said:

"The Western Union Telegraph Company having accepted the restrictions and obligations of this provision by Congress, occupies in Texas the position of an instrument of foreign and interstate commerce, and of a government agent for the transmission of messages on public business. Its property in the State is subject to taxation the same as other property, and it may undoubtedly be taxed in a proper way on account of its occupation and its business. The precise question now presented is whether the power to tax its occupation can be exercised by placing a specific tax on each message sent out of the State, or sent by public officers on the business of the United States." pp. 464, 465.

This authority of the government gives to this telegraph company, as well as to all others of a similar character who accept its provisions, the right to run their lines over the roads and bridges which have been declared to be post-roads of the United States. If the principle now contended for be sound every railroad in the country should be exempt from taxation because they have all been declared to be post-roads; and the same reasoning would apply with equal force to every bridge and navigable stream throughout the land. And if they were not exempt from the burden of taxation simply because they were post-roads, they would be so relieved whenever a telegraph company chose to make use of one of these roads or bridges along or over which to run its lines. It was to provide against the recognition of such a principle that this court, in the case above cited, while holding that telegrams themselves coming from without a State or sent out of it as a part of their conveyance could not be taxed by the State specifically, nevertheless used the language that "its property in the State is subject to taxation the same as other property, and it may undoubtedly be taxed in a proper way on account of its occupation and its business."

A still stronger case in the same direction is that of *Rail-*

road Company v. Peniston, 18 Wall. 5. The plaintiff in that action, the Union Pacific Railroad Company, was incorporated under a law of the United States. The State of Nebraska, under a revenue law passed by its legislature, undertook to lay a tax upon the property of that company which was used or embraced within the limits of its territory, upon a valuation of $16,000 per mile. The property thus rated and taxed consisted of its road-bed, depots, stations, *telegraph poles, wires,* bridges, etc. It will be here observed that a part of the valuation on which this tax was levied was made up of the telegraph poles and wires belonging to the company.

The argument was pressed in that case that the railroad company held its franchises from the government of the United States, and that its property could not be taxed by the State, but this court held otherwise, and in the opinion used this language:

"It is often a difficult question whether a tax imposed by a State does in fact invade the domain of the general government, or interfere with its operations to such an extent, or in such a manner, as to render it unwarranted. It cannot be that a state tax which remotely affects the efficient exercise of a Federal power is for that reason alone inhibited by the Constitution. To hold that would be to deny to the States all power to tax persons or property. Every tax levied by a State withdraws from the reach of Federal taxation a portion of the property from which it is taken, and to that extent diminishes the subject upon which Federal taxes may be laid. The States are, and they must ever be, co-existent with the national government. Neither may destroy the other. Hence the Federal Constitution must receive a practical construction. Its limitations and its implied prohibitions must not be extended so far as to destroy the necessary powers of the States, or prevent their efficient exercise." pp. 30, 31.

The case of *Thomson* v. *Pacific Railroad Co.*, 9 Wall. 579, is then cited, where it was held that the property of that company was not exempt from state taxation, though their railroad was a part of a system of roads constructed under the authority and direction of the United States, and largely

for the uses and to serve the purposes of the general govern-ment. The court further said:

" A very large proportion of the property within the States is employed in execution of the powers of the government. It belongs to governmental agents, and it is not only used, but it is necessary for their agencies. United States mails, troops, and munitions of war are carried upon almost every railroad. *Telegraph lines* are employed in the national ser-vice. So are steamboats, horses, stage-coaches, foundries, ship-yards, and multitudes of manufacturing establishments. They are the property of natural persons or of corporations, who are agents or instruments of the general government, and they are the hands by which the objects of the govern-ment are attained. Were they exempt from liability to con-tribute to the revenue of the States it is manifest the state governments would be paralyzed. While it is of the utmost importance that all the powers vested by the Constitution of the United States in the general government should be pre-served in full efficiency, and while recent events have called for the most unembarrassed exercise of many of those powers, it has never been decided that state taxation of such property is impliedly prohibited." p. 33.

In *National Bank* v. *Commonwealth*, 9 Wall. 353, which was a case of a tax levied upon the shares of a national bank, the same objection in regard to a tax by state authority was pressed upon the court, but this court said that the principle of exemption of Federal agencies from state taxation has a limitation growing out of the necessity upon which the prin-ciple is founded. " That limitation is, that the agencies of the Federal government are only exempted from state legislation, so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government. Any other rule would convert a principle founded alone in the necessity of securing to the government of the United States the means of exercis-ing its legitimate powers into an unauthorized and unjustifi-able invasion of the rights of the States. . . . So of the banks. They are subject to the laws of the State, and are

governed in their daily course of business far more by the laws of the State than of the nation. All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on state law. It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional. We do not see the remotest probability of this, in their being required to pay the tax which their stockholders owe to the State for the shares of their capital stock, when the law of the Federal government authorizes the tax." p. 362.

The tax in the present case, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the State of Massachusetts, and the proportion of the length of its lines in that State to their entire length throughout the whole country is made the basis for ascertaining the value of that property. We do not think that such a tax is forbidden by the acceptance on the part of the telegraph company of the rights conferred by § 5263 of the Revised Statutes, or by the commerce clause of the Constitution.

It is urged against this tax that in ascertaining the value of the stock no deduction is made on account of the value of real estate and machinery situated and subject to local taxation outside of the Commonwealth of Massachusetts. The report of Examiner Fiske, to whom the matter was referred to find the facts, states that the amount of the value of said real estate outside of its jurisdiction was not clearly shown, but it did appear that the cost of land and buildings belonging to the company and entirely without that State was over three millions of dollars. In the statement of the treasurer of the company it is said that the value of real estate owned by the company within the State of Massachusetts was nothing. Since the corporation was only taxed for that proportion of its shares of capital stock which was supposed to be taxable in that State on the calculation above referred to, and since no real estate of the corporation was owned or taxed within

its limits, we do not see why any deduction should be made from the proportion of the capital stock which is taxed by its authorities. But if this were otherwise we do not feel called upon to defend all the items and rules by which they arrived at the taxable value on which its ratio of percentage of taxation should be assessed; and even in this case, which comes from the Circuit Court and not from that of the State, we think it should appear that the corporation is injured by some principle or rule of the law not equally applicable to other objects of taxation of like character. Since, therefore, this statute of Massachusetts is intended to govern the taxation of all corporations therein, and doing business within its territory, whether organized under its own laws or those of some other State, and since the principle is one which we cannot pronounce to be an unfair or an unjust one, we do not feel called upon to hold the tax void, because we might have adopted a different system had we been called upon to accomplish the same result.

It is very clear to us, when we consider the limited territorial extent of Massachusetts, and the proportion of the length of the lines of this company in that State to its business done therein, with its great population and business activity, that the rule adopted to ascertain the amount of the value of the capital engaged in that business within its boundaries, on which the tax should be assessed, is not unfavorable to the corporation, and that the details of the method by which this was determined have not exceeded the fair range of legislative discretion. We do not think that it follows necessarily, or as a fair argument from the facts stated in the case, that there was injustice in the assessment for taxation.

The result of these views is, that the tax assessed against the plaintiff in error is a valid tax; that the judgment of the court below, "that the sum claimed by the plaintiff (below) to be due for taxes, to wit, $10,618.46, be paid to said State by said corporation, with interest thereon," is without error, and so much of said judgment is hereby affirmed.

The decree or judgment, however, proceeds and awards an injunction against the company in the following language,

added to that above extracted : "and that an injunction shall
be issued out of and under the seal of this court, directed to
said corporation, and its officers, agents and servants, command-
ing them and each of them absolutely to desist and refrain
from the further prosecution of the business of said corporation
until said sums due to the said Commonwealth for taxes, as
aforesaid, shall have been fully paid, with interest and costs,
unless the said sum is paid by said defendant within thirty
days from the entry hereof."

The effect of this injunction, if obeyed, is to utterly suspend
the business of the telegraph company, and defeat all its oper-
ations within the State of Massachusetts.   The act of Congress
says that the company accepting its provisions "shall have
the right to construct, maintain and operate lines of telegraph
through and over any portion of the public domain of the
United States, over and along any of the military or post-
roads of the United States."   It is found in this case that
2334.55 miles of the company's lines, out of 2833.05 on which
this tax is assessed, are along and over such post-roads, and of
course the injunction prohibits the operation of the defendant's
telegraph over these lines, nearly all it has in the State.

If the Congress of the United States had authority to say
that the company might construct and operate its telegraph
over these lines, as we have repeatedly held it had, the State
can have no authority to say it shall not be done.   The in-
junction in this case, though ordered by a Circuit Court of the
United States, is only granted by virtue of section 54 of chap-
ter 13 of the Public Statutes of Massachusetts.   If this statute
is void, as we think it is, so far as it prescribes this injunction
as a remedy to enforce the collection of its taxes by the de-
cree of the court awarding it, the injunction is erroneous.

In holding this portion of section 54 of chapter 13 of the
Massachusetts statutes to be void as applicable to this case,
we do not deprive the State of the power to assess and collect
the tax.   If a resort to a judicial proceeding to collect it is
deemed expedient, there remains to the court all the ordinary
means of enforcing its judgment — executions, sequestration,
and any other appropriate remedy in chancery.

*That part of the decree of the Circuit Court which awards the injunction is, therefore, reversed, and the case is remanded to that court for further proceedings in conformity to this opinion.*

MR. JUSTICE BRADLEY was not present at the argument of this case and took no part in its decision.