In the matter of the taxation of the PENNSYLVANIA
TELEPHONE COMPANY.

1. A message sent by telephone from one state into another is commerce
between the states, and cannot be prohibited or regulated by injunction in
either state against persons or corporations engaged in sending such messages,.
because they do not pay the taxes assessed against them by such state

2. The constitutionality of such an assessment may be considered by a court
of chancery.

3. But the court of chancery has not the power to go beyond this and set
the assessment aside. This can only be accomplished by resort to a legal
tribunal.

On petition for injunction.

*The Attorney-General,* for the state.

*Mr. Wm. S. Gummere,* for the respondent.

BIRD, V. C.

The respondent in its answer to the petition in this case admits
its liability to be assessed under the act of April 18th, 1884
(*Rev. Sup. p. 1016*), but denies its liability for the whole amount
of assessment imposed by the state board of assessors. The law
provides

"That every telegraph, telephone, cable or electric light company, not owned
by a railroad company and otherwise taxed, doing business in this state, should
pay an annual tax for the use of the state, by way of a license for its corporate-
franchises."

The law requires every such company, on or before the first
Tuesday of May, to state the gross amount of its receipts from
the business done in this state for the year preceding the first
day of January prior to the making of such report. If any
such company shall neglect or refuse to make such return within
the time limited as aforesaid, the state or its assessors shall ascer-
tain and fix the amount of such receipts in such manner as may

be deemed by them most practicable, and the amount fixed by them shall stand as the basis of taxation of such company under said act. By virtue of said act each of said companies is made liable to pay taxes of two per cent. upon the amount of its gross receipts so returned or ascertained. On or before the first Tuesday of May, 1888, the respondent did make a report showing the amount of its gross receipts for the business done in this state for the year ending December 31st, 1887. By such report such receipts appear to be $3,643.47. It also reported, at the request of the state board of assessors, its gross receipts for business originating within this state and terminating without, $3,122.53, and also the gross amount of receipts from business originating in Pennsylvania and terminating within this state, which amount was $7,398.03.

On the 25th day of June, 1888, the respondent paid the state $72.87, the amount properly assessed upon its gross receipts of the business done within this state, but the whole amount assessed by the state board of assessors was $135.32. This shows that the assessors were not contented with the gross receipts returned by the respondent of business done within this state, but proceeded, as they supposed they might, under the act to ascertain what, in their judgment, was the proper amount of gross receipts, to be assessed, from other sources, and assessed $3,122.53, in addition to $3,643.47. This additional assessment the respondent insists is unlawful.

Its resistance to the payment of this additional tax is based upon the doctrine that it is unconstitutional for any state to attempt to regulate commerce between the states; and that business of this character, originating in one state and terminating in another, is such commerce. I believe this principle was so recognized in the case of the *Standard Underground Cable Co.* v. *Attorney-General, 1 Dick. Ch. Rep. 270.* In that case, Mr. Justice Knapp said, in delivering the opinion of the court of errors and appeals: " Railroads and telegraphs may become instruments of interstate or international commerce, and when, as such instrument, they are in action, they may not be obstructed by state impositions and restrictions; hence, it was held in *The Western*

In the Matter of Pennsylvania Telephone Co.

*Union Telegraph Co.* v. *Massachusetts, 125 U. S. 530*, that the telegraph company having brought itself within the provisions of the act of congress of July 24th, 1886, entitled 'An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military and other purposes,' that collection of a tax imposed upon the telegraph company on its property in Massachusetts could not be enforced by injunction, although the taxing act provided for that as one mode of enforcing payment ; the reason being that an injunction enforced in that state would put a stop to its general operations. The tax, however, was held to be valid, and the state was left to other remedies for its collection. *Pensacola Telegraph Co.* v. *Western Union Telegraph Co., 96 U. S. 1; Telegraph Co.* v. *Texas, 105 U. S. 460*, are also instances of illegal interference with companies as instruments of commerce. But each of these cases holds the companies to be subject to taxation, otherwise legal, which does not obstruct or place a direct burthen upon them either as instruments of general commerce or as agents of the United States.

"The case of *Coe* v. *Errol, 116 U. S. 517*, marks the point where the subjects of commerce pass out of the state's power to tax and come within federal protection. That point is not reached when they become finished production. It is there held that goods, the product of a state, intended for exportation to another state, are liable as part of the general mass of property of the state of another origin until actually started in course of transportation to the state of their destination, or are delivered to a common carrier for that purpose."

These principles are as applicable to messages by telephone as to merchandise. There can be no reasonable distinction made between the office of common carrier of telephone and the office of a common carrier of goods by railway or steamboat. In both cases it is commerce between the states. In every such instance the consideration is, when is the transaction within the constitutional regulation ? The disputes which have led to judicial determination of the various questions have been respecting those

conditions which upon the one hand were deemed commerce and upon the other not.

I think, therefore, the injunction prayed for in this case ought not to be allowed; for if it were to be allowed, it would most certainly, though indirectly, control commerce between states.

But beyond this I do not feel at liberty to consider the question as to the legality or illegality of the assessment. I can only say that a proper case is not made out for the interference of this court. To determine whether this assessment shall stand or be set aside or not, is the province of the courts of law. The power given to this court by the statute extends only to granting injunctions where taxes assessed are not paid. No authority whatever is conferred to review such assessments. Whatever the result may be practically, in every such case as the one now before the court, it seems to me it would be a plain usurpation for this court to attempt to set the assessment aside in this or in any other such case. That the constitutional question may be considered by the court of chancery was expressly decided in the case of *Standard Underground Cable Co.* v. *Attorney-General, supra.* But, as has been shown, the question in that case only pertained to the propriety of issuing an injunction, and no other question has been considered in this. If the respondent desires a declaration that this assessment, in excess of the $3,643.47, be set aside, it must seek it in another forum.