People ex rel. Postal-Telegraph Cable Company, Relator, *v.* State Board of Tax Commissioners, Defendant.

(Supreme Court, New York Special Term, April, 1917.)

Taxes — on franchises — corporations — when assessment invalid — statutes — certiorari.

Where a corporation has received franchises from both the state and federal governments, an assessment for the purposes of state taxation which includes both is invalid unless capable of separation.

Telegraph companies which have accepted the provisions of the United States statute entitled " An act to aid in the construction of telegraph lines," giving to such companies the right to use the post-roads, have thereunder derived some rights or franchise from the federal government with which the states cannot interfere, and if such franchise or right is included in the assessment of their special franchise under the statute of the state of New York providing for the taxation of special franchises the assessment is invalid.

As the state board is directed by the New York Tax Law to assess as part of the special franchise " all franchises, rights, etc.," to use the streets, it must be assumed to have included in its valuation the rights derived under the United States statute and as the items cannot be separated the assessment, so far as the intangible property is concerned, cannot be sustained.

CERTIORARI to review an assessment for the year 1912 of relator's special franchise.

Henry G. Fritsche and George H. Mallory, for relator.

Lamar Hardy, corporation counsel, and A. B. Scovill, for city of New York.

Egburt E. Woodbury, attorney-general, and Leonard J. Obermeier, for the state.

PENDLETON, J.    This is a certiorari proceeding to review the assessment for the year 1912 of the relator's special franchise consisting of telegraph lines constructed and operated in, under or along the streets, highways or public places in the city of New York with the franchise or right to maintain and operate the same in and over said streets and highways.

Relator is a telegraph company incorporated under the general laws of the state of New York for the incorporation of telegraph companies which provide that corporations organized thereunder are author-

People ex rel. Postal-Tel. C. Co. *v.* Tax Comrs. **525**

Misc.]                    Supreme Court, April, 1917.

ized to construct telegraph lines along and upon any of the public roads and highways.

The Revised Statutes of the United States, section 5263 (originally Laws of 1866, chap. 230), provides: "Any telegraph company now organized, or which may hereafter be organized, under the laws of any State, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post-roads.

"§ 5266. Telegrams between the several Departments of the Government and their officers and agents, in their transmission over the lines of any telegraph company to which has been given the right of way, timber, or station lands from the public domain shall have priority over all other business, at such rates as the Postmaster-General shall annually fix. And no part of any appropriation for the several Departments of the Government shall be paid to any company which neglects or refuses to transmit such telegrams in accordance with the provisions of this section.

"§ 5267. The United States may, for postal, military, or other purposes, purchase all the telegraph lines, property, and effects of any or all companies acting under the provisions of the act of July twenty-fourth, eighteen hundred and sixty-six, entitled 'An act to aid in the construction of telegraph lines, and to secure to the Government the use of the same for postal, military, and other purposes,' or under this

Title, at an appraised value, to be ascertained by five competent, disinterested persons, two of whom shall be selected by the Postmaster-General of the United States, two by the company interested, and one by the four so previously selected.

" § 5268. Before any telegraph company shall exercise any of the powers or privileges conferred by law such company shall file their written acceptance with the Postmaster-General of the restrictions and obligations required by law."

Relator filed its acceptance of the provisions of this act as therein provided.

There is no dispute that the public streets and highways in the city are post-roads of the United States within the meaning of this statute.

The state board, in assessing relator's special franchise in the city of New York, fixed the value of the tangible property at $232,587, and the intangible at $166,120, and the relator now presents for decision in these proceedings as the only question that the assessment of its special franchise for taxation is invalid because it includes in the value of the intangible property the franchise given to it by the federal statute which it is not within the power of the state to tax.

There is no dispute that a state cannot tax franchises derived from the federal government, and where a corporation has received franchises from the state and federal governments an assessment for the purposes of state taxation which includes both is invalid unless capable of separation.

In *California* v. *Central Pacific R. Co.*, 127 U. S. 1, assessments were made by the state board of California of the franchise, roadbed, rails and rolling stock of the Central Pacific Railroad Company and of the Southern Pacific Railroad Company in a gross amount for each corporation. Both corporations were incor-

porated under the laws of California, but had also received rights and powers or franchises under statutes of the United States. It was held that a state cannot tax franchises granted by the United States and that, as the assessment included the value of such franchises and that these values were so blended with the other items of which the assessment was composed that they could not be separated, the assessments were void.

It is well settled that the statute in question did not vest in the corporations availing themselves of its provisions the right of eminent domain, and that the right of franchise given is as to post-roads and properties not owned by the United States subject to the rights of the owners of the fee. *Western Union Tel. Co.* v. *Penn. R. R. Co.,* 195 U. S. 574; *St. Louis* v. *Western Union Tel. Co.,* 148 id. 92; *Western Union Tel. Co.* v. *City of Richmond,* 224 id. 160. It did, however, subject to such rights, vest in the companies a right or franchise to use such post roads with which right the state cannot interfere. *Western Union Tel. Co.* v. *Ann Arbor R. R. Co.,* 178 U. S. 239; *Western Union Tel. Co.* v. *Penn. R. R. Co.,* 195 id. 540, 564.

In *Western Union Tel Co.* v. *Massachusetts,* 125 U. S. 530, it was held that a statute of the state authorizing an injunction to prevent corporations from doing business within the state for non-payment of taxes in arrears is void so far as it assumes to confer power upon a court to restrain a telegraph corporation, which has accepted the provisions of the act of congress, from operating its lines over the post-roads of the United States.

In *Pensacola Telegraph Co.* v. *Western Union Tel. Co.,* 96 U. S. 1, it was held that a telegraph company, which had accepted the provisions of the act and acquired permission from a railroad company to

**528** People ex rel. Postal-Tel. C. Co. *v.* Tax Comrs.

Supreme Court, April, 1917.        [Vol. 99.

operate along its line, could not be prevented from so doing by any act of the state, and in *United States* v. *Union Pacific R. R. Co.,* 160 U. S. 1, it was held that a contract by a railroad company to exclude a telegraph company which had accepted the provisions of the act from the use of its lines, being post-roads, was invalid. That the act vested important rights in the companies is clearly stated in *Western Union Tel. Co.* ·v. *Penn. R. R. Co.,* 195 U. S. 540, 567. The court says: '' If the act grants no rights, it is urged, except by permission of the railroad companies, it confers no more than can be obtained from the railroad companies. The objection is best answered by examples. The telegraph company had such permission in the *Pensacola* case. It needed, however, the act of 1866 to make its exercise effectual against the legislation of the State of Florida. In the *Union Pacific* case a claim of a monopoly by one telegraph company was answered by the act construed as ·a grant of rights to all companies. These examples show important results achieved by the act, and the principles of the cases may come to be applied to prevent other hostile action of States or individuals.''

In *Western Union Tel. Co.* v. *Wright,* 185 Fed. Repr. 250, the state board conceded that the value of the rights derived under the act of congress was included in the assessment and it was held invalid.

In *City & County of San Francisco* v. *Western Union Tel. Co.,* 17 L. R. A. (Cal.) 301, it was held that an assessment of '' franchises '' included that granted by the United States statute in question and was therefore invalid.

That the assessment in this case of relator's intangible property included the right or franchise derived under the United States statute seems clear.

The Tax Law, defines the terms '' land,'' '' real

People ex rel. Postal-Tel. C. Co. *v.* Tax Comrs.  **529**

Misc.]                    Supreme Court, April, 1917.

estate '' and '' real property '' as used for purposes of taxation to '' include  *  *  *  all telegraph lines, wires, poles and appurtenances  *  *  *  and all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place for conducting steam, heat, water, oil, electricity, or any property, substance or product capable of transportation or conveyance therein or that is protected thereby, *including the value of all franchises, rights, authority or permission to construct, maintain, or operate, in, under, above, upon, or through, any streets, highways, or public places, any mains, pipes, tanks, conduits or wires,* with their appurtenances, for conducting water, steam, heat, light, power, gas, oil, or other substance, or electricity for telegraphic, telephone or other purposes,'' and the same section defines a special franchise as follows: '' A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a ' special franchise.' A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise.'' Consol. Laws, chap. 60, § 3. Section 43 provides that '' The state board of tax commissioners shall annually fix and determine the valuation of each special franchise.''

By section 43 of the Tax Law, as amended by chapter 712 of the Laws of 1899, now substantially reproduced in section 44 of the Tax Law, it is provided that: '' Every person, copartnership, association or corporation subject to taxation on a special franchise, shall within thirty days after this section takes effect, or

34

**530** People ex rel. Postal-Tel. C. Co. *v.* Tax Comrs.

Supreme Court, April, 1917. [Vol. 99.

within thirty days after such special franchise is acquired, make a written report to the state board of tax commissioners containing a full description of every special franchise possessed or enjoyed by such person, copartnership, association or corporation, a copy of the special law, grant, ordinance or contract under which the same is held, or if possessed or enjoyed under a general law, a reference to such law." Under this provision of the statute relator filed a report in which it stated that its only special franchise was the one derived by it under the United States statute above referred to. In the notice served on relator by the state board as required by law, it is stated that the state board has " made the valuation of the special franchise constructed, maintained or operated by relator at its full and actual value, etc."

As the state board is directed by the statute to assess as part of the special franchise all franchises, rights, authority or permission to construct, maintain or operate, in, under, above, upon or through any streets or highways or public places, it must be assumed, especially in view of the report and notice above set forth, that it included in its valuation the rights or franchises derived under the United States statute, and as the items cannot be separated the assessment, so far as it concerns the intangible property, is invalid.

*Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Massachusetts* v. *Western Union Tel. Co.,* 141 id. 40, and *Western Union Tel. Co.* v. *Gottlieb,* 190 id. 412, are in no wise in conflict with these views. In all those cases it was held that the particular tax or assessment there involved was on property only, exclusive of any franchise rights as such and that, being a tax on such property only, the assessments did not include the value of the franchise given by the act of

congress and were therefore valid. Here, the tax is on property including all franchises to use the streets and highways and the assessment is specifically made to include the value of all such franchises. Calling it real estate does not help the matter; if not within the taxing power of the state it cannot be made so by a name.

It may be conceded that a state tax or an assessment limited to the franchise granted by the state would be valid and that the state might make a reasonable charge for the use of the street or so much thereof as is physically occupied by way of a rental or charge per pole or length of line laid in the street (*St. Louis* v. *Western Union Tel. Co.,* 148 U. S. 100; *Western Union Tel. Co.* v. *City of Richmond,* 224 id. 160), but such is not this case. The tax neither purports to be such a charge nor is such in its nature. It is a tax pure and simple on property consisting of certain tangible and intangible property, the latter representing all and every franchise to use the streets. That the value of the latter is determined by the net earning method (*People ex·rel. Jamaica Water Supply Co.* v. *Tax Commissioners,* 196 N. Y. 39) is a circumstance tending to show that the tax is not in the nature of rent.

It has been suggested that the words " subject to assessment in each city, town or village " in section 43 of the tax act above quoted should be construed as meaning legal assessment, and that as the franchise under the act of congress is not legally assessable it should be deemed excluded by force of this provision. I do not think. however, the wording of the clause will bear any such construction; its manifest meaning is that the assessment shall be made for the locality in which property is situated.

Judgment accordingly.