LOUISE EAMES MATHER

*v.*

THE CITY OF OTTAWA.

*Filed at Ottawa November 14, 1885.*

1. MUNICIPAL CORPORATIONS—*constitutional limitation of taxing power to corporate purposes.* Section 5, article 9, of the constitution of 1848, providing that the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for *corporate* purposes, was a limitation upon the taxing power of the State, and under it taxation can not be imposed by such corporations except for corporate purposes.

2. SAME—*municipal aid to a merely private enterprise.* A municipal corporation is prohibited by that clause in the constitution from levying a tax in aid of a merely private enterprise, although the purpose may be one which will add to the wealth and prosperity of the municipality. Such a body can not incur a liability, and levy and collect taxes on the property of the citizen to aid in the development of mere private enterprises.

3. SAME—*municipal bonds in aid of that which was not a "corporate purpose."* In this case, bonds of the city of Ottawa were issued under an ordinance submitted to a vote of the people, and adopted thereby, which authorized the mayor to borrow, in the name of the city, the sum of $60,000, "for the use of said city, to be expended in developing the natural advantages of the city for manufacturing purposes," and provided for the issue of bonds therefor. The bonds, when issued, were given to an agent of a private corporation, to be by him expended in the improvement of the water-power upon certain rivers within the city, and he negotiated the same to a person then residing in the city: *Held,* that the bonds so issued were void for want of power in the corporate authorities to issue them, the purpose for which they were issued not being a *corporate* purpose.

4. SAME—*inhabitants of municipality chargeable with notice of the contents and purposes of its ordinances.* All residents of an incorporated city are chargeable with notice of the contents of all ordinances passed for the

government and welfare of the city. So when an ordinance shows the purpose for which city bonds are issued, if a resident of the city buys them he will be held chargeable with notice of the purpose and object of their issue.

5. SAME—*municipal powers—generally.* A municipal corporation, being the creature of law, possesses only such properties and powers as its charter confers upon it, either directly or as incidental to its very existence. So long as it acts within its corporate powers it may bind the people within its limits, but when it transcends its powers, its acts are nugatory.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of La Salle county; the Hon. GEORGE W. STIPP, Judge, presiding.

Mr. CHARLES E. TOWNE, for the appellant.

Mr. M. T. MOLONEY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by Louise Eames Mather, in the circuit court of La Salle county, against the city of Ottawa, upon one hundred and twenty coupons, which were attached to certain bonds executed by the mayor and city clerk of Ottawa, under the authority of an ordinance passed by the city council of Ottawa, on the 15th day of June, 1869, and also an ordinance adopted on the 29th day of July, 1869, to carry out the ordinance of June 15th. The city of Ottawa was incorporated by an act of the legislature on the 10th day of February, 1853, and under the act of incorporation the city was intrusted with such powers as are usually conferred upon incorporated cities for the government of the people within the limits of such a corporation. Among the powers conferred may be found the following:

Article 5, section 1: "The city council shall have power and authority to levy and collect taxes upon all property, real and personal, within the limits of the city, not exceeding one-half of one per cent per annum upon the assessed value thereof,

and may enforce the payment of the same in any manner to be prescribed by ordinance not repugnant to the constitution of the United States and of this State."

Article 5, section 3:   "The city council shall have power * * * to establish, support and regulate common schools, to divide the city into school districts, to borrow money on the credit of the city, and to issue bonds therefor, and pledge the revenue of the city for the payment thereof: Provided, that no sum or sums of money shall be borrowed at a greater interest than at ten per cent per annum."

Article 10, section 20:   "No money shall be borrowed by the city council until the ordinance passed therefor shall be submitted to and voted for by a majority of voters of said city attending an election held for that purpose."

On the 15th day of February, 1851, the legislature passed an act creating a corporation known as the Ottawa Manufacturing Company. The act is entitled "An act to authorize certain persons to construct a dam across Fox river for hydraulic and manufacturing purposes." Section 2 of the act is as follows:

"Section 2.   The said company, when formed, are hereby authorized to build a dam across Fox river, on section 11 or 12, in township 33 north, of range 3 east, in La Salle county, for the purpose of creating a water power, and the said company may use, lease or otherwise dispose of the same, and may construct such other works, buildings and machinery as may be deemed necessary or proper to use such water, and to promote the interests and objects of the company."

On the 16th day of February, 1865, the legislature passed an act enlarging the powers conferred by the act of 1851, under which the company was empowered to build a dam across the Illinois river at such point as the company might elect, with the right to construct a race or races, for the purpose of introducing the water of the Illinois river into the pool of the dam authorized to be erected across Fox river.

On the 16th day of June, 1869, the city of Ottawa passed an ordinance, section 1 of which is as follows:

"Section 1.    Be it ordained by the city council of the city of Ottawa, that the mayor of the city be and he is hereby authorized to borrow, in the name of the city, at a rate of interest not exceeding ten per cent, the sum of $60,000, for the use of said city, to be expended in developing the natural advantages of the city for manufacturing purposes, and that bonds of the city be issued therefor in the sum of $500, with interest payable annually, said bonds to be payable one-third in five years, one-third in ten years, and one-third in fifteen years after the date thereof:    Provided, that no application shall be made of the proceeds of said bonds except for the purpose aforesaid, and in pursuance of an ordinance to be passed for that purpose by the city council, nor until the faithful application of the proceeds of such bonds to the purpose aforesaid shall be fully secured to the city."

Section 3 required the ordinance to be submitted to the voters of the city for rejection or adoption at an election to be held for that purpose.

On the 30th day of July, 1869, an ordinance was passed by the city of Ottawa to carry into effect the ordinance of June 15, 1869, in which it was provided "that bonds of the city for the sum of $60,000 be issued by the mayor in accordance with the terms and conditions of said ordinance of June 15, 1869, and that he deliver the same to William H. W. Cushman, to be used by him in developing the natural resources and surroundings of the city, and that the said Cushman is authorized and directed to expend the same in the improvement of the water-power upon the Illinois and Fox rivers within the city and in the immediate vicinity thereof, under the franchises and powers which have been granted for that purpose by the legislature of the State, or which may hereafter be granted for that purpose, in the manner in which his judgment shall best secure the practical and permanent use of

said water-power in the city and its immediate vicinity: Provided, that said Cushman shall execute and deliver to the mayor an agreement from him to the city of Ottawa, that he will, without unreasonable or unnecessary delay, cause a good, substantial and sufficient dam to be constructed across the Illinois river above the city, to bring into use all the available water-power of said river at Ottawa, and will construct sufficient head and tail races to make such water-power available." The ordinance also contained a provision that Cushman should bind himself that if the work was not constructed as provided by the ordinance, he would return the bonds or their value, and save the city harmless from all loss on account of interest. No money was borrowed by the city on the faith of the bonds, but on the 2d day of August, 1869, the bonds for $60,000 were issued and delivered to Cushman as a donation to aid in securing the water-power contemplated by the constructing of the dams and races heretofore mentioned. The coupons sued upon are a part of those attached to the bonds when they were issued, which provide for the payment of annual interest. The bonds upon which the coupons were attached were purchased by Lester H. Eames, agent for the plaintiff, in 1871. It also appears that Eames and the plaintiff were residents of the city of Ottawa at the time the ordinances were passed, and at the time the bonds were issued and delivered to Cushman.

All residents of an incorporated city are chargeable with notice of the contents of all ordinances passed for the government and welfare of the city. The ordinances under which the bonds were issued expressly state that the bonds were to be used "in developing the natural advantages of the city for manufacturing purposes." Appellant is therefore chargeable with direct notice of the object and purpose for which the bonds were issued and placed upon the market. There is therefore no question of innocent purchaser considered in the record.

The sole question here involved is one of power,—whether the city of Ottawa, under its charter and the constitution of the State, had authority to issue the bonds for the purpose for which they were issued. Municipal corporations are institutions designed for the local government of towns and cities; or, more accurately, towns and cities, with their inhabitants, are, for the purpose of subordinate local administration, invested with a corporate character. (Dillon on Mun. Corp. sec. 9.) Chief Justice MARSHALL's description of a corporation is in these words: "A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence."

So long as corporations act within their corporate powers they may bind the people within their corporate limits; but when they transcend these powers, their acts are nugatory. The sections of the charter relied upon as conferring the power are comprehensive in their terms, but they must be considered in connection with that portion of the constitution of the State in force at the time the charter was enacted, which relates to the same subject. Article 9, section 5, of the constitution of 1848, which was in force when the bonds were issued, provides: "The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes." This court has held, in a number of cases, that the clause of the constitution *supra*, is a limitation upon the taxing power of the State,—that taxation can not be imposed by a corporation except for corporate purposes. (*Johnson* v. *Campbell*, 49 Ill. 316; *Harward* v. *St. Clair Drainage Co.* 51 id. 130; *Madison County* v. *The People*, 58 id. 456; *The People* v. *Dupuyt*, 71 id. 653.) Cases may arise where it is difficult to determine whether a tax to be imposed may or may not be for a corporate purpose, but in this case, under our decisions,

it is manifest that a tax imposed to raise money to pay the bonds or the interest thereon, which were issued by the city of Ottawa, could not be for a corporate purpose.

As early as 1860, in *Johnson* v. *Stark County*, 24, Ill. 75, this clause of the constitution was considered, and in discussing what was and what was not a corporate purpose, the court said: "All will perceive that the building of our court houses, jails, poor houses, the opening and keeping in repair of common highways, and the erection and maintenance of bridges by which they are rendered useful to the people, are 'county purposes,' for which the people of the county may be taxed, and that the erection of hotels, mercantile, manufacturing, trading and banking houses, although of great importance to the prosperity of the community, are not such purposes as were contemplated by the framers of the constitution. These are properly regarded as matters of individual enterprise, and can not, in any reasonable or just sense, be regarded as public or county purposes." In *Bissell* v. *City of Kankakee*, 64 Ill. 249, where the city had issued certain bonds to the Douglas Linen Company, to enable it to embark in the manufacture of linen fabrics in that city, under a charter which gives the city "power to borrow money on the credit of the city, and pledge the revenue of the city for its payment, and issue bonds therefor," it was held that the bonds were issued without authority of law, and were void. In *English* v. *The People*, 96 Ill. 566, the question arose as to the validity of a tax levied to pay the principal and interest of certain bonds issued by a city to aid a private manufacturing company. It was held that a city tax levied for the payment of the principal and interest of bonds issued by the city, in aid of a private manufacturing corporation, can not be enforced, as such bonds are void, even in the hands of innocent purchasers. The same rule has beeen declared in other courts, when a similar question has arisen. See *Ohio Valley Iron Works* v. *Menardsville*, 11 W. Va. 1, and *Land Association* v. *Topeka*, 20 Wall. 655.

It may be, and probably is true, that the contemplated improvement of the water-power on the Illinois and Fox rivers in the city of Ottawa, if it had been judiciously and properly carried out, might have built up the city, and added greatly to its general growth, welfare and prosperity; but the establishment of any kind of manufactures which employed capital and labor within the city might have produced the same result, and yet the city would have no power to impose taxes to raise money to be devoted to such purposes. Whenever the tax is levied to aid in any private enterprise, it is prohibited by the constitution, although the object may be one which may add to the wealth and prosperity of the city. A municipal corporation can not incur a liability and levy and collect taxes on the property of the citizen to aid in the development of mere private enterprises; but the corporation may become indebted, for corporate purposes, where the purpose is one pertaining entirely to the interest of the public. Then the corporation may properly act, and the acts will be binding.

But aside from the authorities heretofore cited in support of the views here expressed, we have additional authority bearing directly on the validity of the bonds. A part of the bonds issued by the city were before the Supreme Court of the United States, in *Ottawa* v. *Cary*, 108 U. S. 110, and the court, after a careful review of the authorities, held that the bonds were void. .

From what has been said, it follows that the evidence offered by appellant for the purpose of proving that the erection of the proposed water-power would have been of great benefit to the city of Ottawa and its business interests, increasing the value of taxable property, etc., was properly rejected by the court. Whether the proposed improvement would or would not have been of great benefit to Ottawa and its citizens was a matter of no moment. If the debt was not created for a corporate purpose, as we have seen it was not, the city had no power to incur the debt and issue the bonds.

The ruling of the circuit court in giving and refusing instructions was in harmony with the views herein expressed, and it will serve no useful purpose to consider the objections in detail made to the instructions.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*