SANFORD v. POE et al. (two cases). FARGO v. SAME. PLATT v. SAME.

(Circuit Court of Appeals, Sixth Circuit. July 15, 1895.)

Nos. 321, 322, 324, 325.

1. EQUITY JURISDICTION—INJUNCTION—CERTIFICATION OF TAX ASSESSMENTS.

A court of equity has jurisdiction, on the ground of avoiding a multiplicity of suits, of a bill brought by an express or telegraph company to enjoin a state board of appraisers from certifying to numerous county auditors an alleged illegal assessment of complainant's property for purposes of taxation.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS — CONSTITUTIONALITY OF STATE STATUTES.

Where a federal circuit court had declared a state statute void as contravening a state constitution, but afterwards the state supreme court sustained the validity of the statute, held, that the federal court, in a case involving no rights of contracts entered into on the faith of its prior decision, was bound to follow the state decision.

3. SAME—AUTHORITY OF STATE DECISIONS—FRIENDLY SUITS.

The fact that a decision of a state supreme court in relation to the constitutionality of a state statute was rendered in a friendly suit, made up in as summary a way as possible, for the purposes of a test case, does not in any way impair its authority in the federal courts.

4. CONSTITUTIONAL LAW—DUE PROCESS—ASSESSMENTS FOR TAXATION.

A state statute providing for the assessment of the property of telegraph, telephone, and express companies by a state board of appraisers (Act Ohio, April 27, 1893; the "Nichols Law") is not to be held void for want of due process of law, where, as construed by the highest court of the state, it gives to such companies a right to be present before the board and be heard in the matter. 64 Fed. 9, affirmed.

5. SAME—TAXATION OF TELEGRAPH AND EXPRESS COMPANIES—METHODS OF ASSESSMENT.

A state law imposing a tax on telegraph, telephone, and express companies is not invalid, under the constitution of the United States, either because the assessment is made on property largely used in interstate commerce, or because the rule of assessment requires the property of the company to be valued as a unit profit-producing plant, or because the assessors are required to look to the value of the capital stock as one factor in determining the assessment.

6. SAME.

The Ohio statute known as the "Nichols Law" (Rev. St. § 2778a), which relates to the taxation of telegraph, telephone, and express companies, and regulates the mode of appraisement, is not void under the constitution of Ohio, nor (accepting the construction placed upon it by the supreme court of Ohio, State v. Jones, 37 N. E. 945) does it contravene any provision of the constitution of the United States. 64 Fed. 9, affirmed.

Appeals from the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.

These suits were brought to enjoin the assessment of taxes against the Adams Express Company for the years 1893 and 1894, and the American Express Company and the United States Express Company for the year 1894. The defendants are Ebenezer W. Poe, auditor of the state of Ohio, John K. Richards, attorney general of the state of Ohio, and William T. Cope, treasurer of the state of Ohio, and compose a board of tax appraisers for the assessment of telegraph, telephone, and express companies, under an act of the Ohio legislature passed April 27, 1893, and known as the "Nichols Law." To the several bills demurrers were filed, which, on full argument, were finally sustained, and the bills dismissed. The complainants have severally perfected appeals and assigned errors. The ground upon which the suits all proceed is, in substance, that the assessments complained of, and the scheme

of taxation embodied in the Nichols law, under which the assessments were made, are void as in contravention—First, of the constitution of Ohio, which provides that all property shall be taxed according to its true value in money by a uniform rule, and that the property of corporations shall be taxed "the same as the property of individuals" (Const. Ohio, art. 12, § 2, and art. 13, § 4); second, "of the constitution of the United States, because the effect of the rule of valuation prescribed by the statute and adopted in these particular assessments is, not to confine the tax to the property of the companies within the state of Ohio, but to tax something else which is not within the state of Ohio, and therefore to take the property of the companies without due process of law, and that the scheme, as a special one applied to these special agencies of interstate commerce, imposes an illegal burden upon that commerce"; third, complainants also contend that, if the Ohio statute be valid under both the constitution of Ohio and of the United States, the assessments are nevertheless void, because the assessments made were arbitrary and illegal, in that the assessors did not follow the statute or pursue any definite mode of valuation. Upon a first hearing before Circuit Judge Taft, the demurrers of the defendants were overruled, and defendants required to answer. The ground upon which Judge Taft proceeded was—First, jurisdiction in equity was predicated upon the ground that a multiplicity of suits would result unless the defendants should be restrained from certifying their assessments to the auditors of 87 counties, within each of which the defendants had property; second, that the Nichols law, under which the assessments had been made, was void as in conflict with the constitution of the state of Ohio. The opinion of the court upon these questions is reported in 61 Fed. 449. Before answers were filed, a suit involving the constitutionality of this legislation was decided by the supreme court of Ohio, and the validity of the law under the Ohio constitution sustained. State v. Jones, 37 N. E. 945. Upon the filing of this opinion by the Ohio court, Judge Taft granted a rehearing, and sustained the demurrers of defendants, upon the ground that the decision of the supreme court of Ohio as to the construction of the Nichols law and its validity under the constitution of Ohio was conclusive upon the courts of the United States. A very convincing opinion upon this aspect of the question was filed, and is reported in 64 Fed. 9. A further argument was heard before Judge Taft upon the question as to whether the state board of assessors had enforced the Nichols law according to the construction placed thereon by the supreme court of Ohio. Upon the latter hearing it was agreed that the bills of the several complainants should be treated as amended by the incorporation therein of the facts which had been made to appear by the two affidavits of the defendant Poe as to the manner in which the amount of the several assessments had been reached. The learned circuit judge, upon the bills as thus amended, was of opinion that the board of assessors had kept "well within the law" as construed by the Ohio court. He therefore sustained the demurrers and dismissed the several bills.

Ramsey, Maxwell & Ramsey, for plaintiffs.

J. K. Richards, Atty. Gen., and Thos. McDougall, for defendants.

Before LURTON, Circuit Judge, and SEVERENS and HAMMOND, District Judges.

After the foregoing statement of the case, the opinion of the court was delivered by LURTON, Circuit Judge.

If the assessments complained of be illegal, for any reason, the jurisdiction of a court of equity to enjoin the defendants from certifying them to the several county auditors of the state seems to be clear, upon the ground that a multiplicity of suits would result unless the assessment be enjoined before the assessors shall certify to each county auditor the proportion of the gross assessments collectible by each county auditor under the scheme of apportionment among the counties provided by the act. To require the complain-

ants to pay each of the numerous county auditors, and then sue to recover, or to enjoin each, would be most oppressive.    We think, therefore, that the jurisdiction asserted in the bill, of avoiding a multiplicity of suits, was a sufficient ground to support the original bill, as well as the bills subsequently filed to enjoin the tax of 1894, assessed after the jurisdiction in the original case had attached. Cummings v. Bank, 101 U. S. 153–157; State Railroad Tax Cases, 92 U. S. 575–618; Express Co. v. Seibert, 142 U. S. 339–348, 12 Sup. Ct. 250; Shelton v. Platt, 139 U. S. 591–599, 11 Sup. Ct. 646; Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62; Express Co. v. Poe, 61 Fed. 470.

The question as to the constitutionality of the Nichols law under the Ohio constitution must be regarded as conclusively settled for this court by the opinion of the highest court of the state of Ohio, as announced in the case of State v. Jones, heretofore cited.    The objection that this court ought not to feel precluded by the opinion of the Ohio court, by reason of the made-up character of the suit in which that opinion was announced, is not satisfactory.    It is true that the circuit court of the United States first obtained jurisdiction of the question as to the validity of the Nichols law under the constitution of Ohio, and that that court, in a very vigorous and persuasive opinion, concluded that the Nichols law contravened the constitution of Ohio, and was therefore invalid.    The courts of Ohio had not theretofore passed upon the question, and the circuit court could not escape the duty of determining for itself the true meaning and construction of the constitution of Ohio, so far as involved by the mode of assessment provided by the Nichols law.    Before a final decree had been rendered, the supreme court of Ohio, in a case involving the validity of the same law, announced a contrary opinion, and held the Nichols law, as construed by the same court, an entirely valid law, so far as it was supposed to be affected by the state constitution.    Under the circumstances of this case, we think the duty of the circuit court was to accept the opinion of the Ohio court as conclusive, and to render judgment accordingly.    The case before it involved no rights or contracts between individuals which had been entered into upon the faith of earlier and conflicting decisions of either the courts of the United States or of the state, and therefore presented no question such as arose in Burgess v. Seligman, 107 U. S. 32, 2 Sup. Ct. 10, or Carroll Co. v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, or Douglass v. Pike Co., 101 U. S. 677, or Rowan v. Runnels, 5 How. 134.    Where the construction or validity of a state statute does not involve rights acquired upon the faith of earlier and conflicting decisions, it is the clear duty of federal courts to accept and adopt the decisions of the highest court of a state in respect to the construction and conformity of state laws to the constitution of the state.    The decision of such questions properly belongs to the highest courts of the state.    We entirely concur with the opinion of the circuit judge upon this question, who said:

"Here is not involved the validity or construction of a law on the faith of which individuals have made contracts, advanced money, or incurred liability. We have here simply a tax law fixing the obligation of artificial

persons of a certain class to contribute to the support of the state. In respect of such a law, it would be anomalous and absurd to have a diversity of rulings between the state and federal courts. The intolerable result of such a diversity would be that companies who could invoke the jurisdiction of the federal court would not pay the tax, while all those who could not invoke that jurisdiction would be compelled to pay it. There is nothing in the decisions of the supreme court of the United States which gives the slightest warrant for supposing that, in the case of a state tax law, it would not follow the decision of the supreme court, whenever rendered, and however divergent from its own views the conclusion, provided no federal question was involved. In the State Railroad Tax Cases, 92 U. S. 575, 617, 618, the circuit court of the United States held that a tax law of Illinois was invalid because in violation of the state constitution. Before the cases reached the supreme court of the United States on appeal, the supreme court of the state decided that the law was valid. The circuit court decree was accordingly reversed. It is true that in that case the supreme court of the United States concurred with the state court on the merits, but Justice Miller used this language: 'But if, for no other reason, we should reverse the decrees of the circuit court in these cases because the same questions involving the considerations urged upon us here have been decided by the supreme court of the state of Illinois in a manner which leads to the reversal of these. * * * As the whole matter, then, concerns the validity of a state law as affected by the constitution of the state, that question and the other one of the true construction of that statute belong to the class of questions in regard to which this court still holds, with some few exceptions, that the decisions of the state courts are to be accepted as the rule of decisions for the federal courts. It is, nevertheless, a satisfaction that our judgment concurs with that of the state court, and leads us to the same conclusions.' In Bauserman v. Blunt, 147 U. S. 647, 13 Sup. Ct. 466, Moores v. Bank, 104 U. S. 625, and Green v. Neal's Lessee, 6 Pet. 291, the supreme court reversed the ruling of the circuit court as to the effect of a state statute of limitation solely because, after the decision by the circuit court, the supreme court of the state had given the statute a different construction. In Stutsman Co. v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227, a case involving the construction of the tax laws of the territory of Dakota, the supreme court of the territory took one view. The case was carried to the supreme court of the United States for review. Meantime the territory had become a state, and the state supreme court reversed the ruling of the territorial court. The federal supreme court thereupon reversed the judgment of the territorial court in deference to the decision of the state court. See, also, Suydam v. Williamson, 24 How. 427, and Fairfield v. Gallatin Co., 100 U. S. 47."

The suggestion that the opinion of the Ohio court should not be followed, because the suit in which it was announced had many features of a moot-court case, cannot be seriously entertained. The facts do show that a case was made up for the purpose of obtaining the opinion of that court in as summary a way as possible, and that it was intended as a test case. The facts now relied upon to destroy the effect of the decision were also made known to the Ohio court. The conclusion that court reached was that the case was one fairly under its jurisdiction, and that the validity of the Nichols law under the Ohio constitution was presented in a way to give jurisdiction and demand decision. That it was in reality a friendly suit does not detract from the weight of the court's opinion as an opinion. The case was argued and duly considered. Opportunity was given the present able counsel, then and now representing the complainants, to appear and argue the case. We think that due respect for the high tribunal who heard and decided the case requires that we shall accept its judgment that the case was not a

moot case, but was one entitled to be heard and decided. This was the conclusion of the circuit court, and meets our approval.

Being of opinion that the decision of the supreme court of the state removes from this case all questions of conflict between the act and the constitution of the state, there remains for consideration the question as to whether there is in the act, as construed by the state court, or as administered, any violation of rights secured by the federal constitution to the complainants. The law under which the assessments complained of were made is entitled: "An act to amend and supplement sections 2777, 2778, 2778a and 2780 of the Revised Statutes of Ohio." Section 2778a is the only one which needs to be set out, and is as follows:

"Sec. 2778a. Every express, telegraph and telephone company embraced in section 2777, whether chartered by the laws of this state or by any other state or country, doing business in this state, shall, annually, between the first and tenth day of May, return to the auditor of state under the oath of its treasurer, the amount of its capital stock, its place of business, the par value and market value (or if there be no market value, then the actual value) of its shares at the time of said return. The return shall also contain a statement in detail of the entire real and personal property of said company, and where located, and the value thereof as assessed for taxation; the telegraph and telephone companies shall,` in addition thereto, return the whole length of their lines, and the length of so much of their lines as is without and as is within the state of Ohio, which lines shall include what said telegraph and telephone companies control and use under lease or otherwise; and said board of appraisers and assessors shall, in the determining the value of the property of said companies in this state, to be taxed within the state and assessed as herein provided, be guided by the value of said property as determined by the value of the entire capital stock of said company, and such other evidence and rules as will enable said board to arrive at the true value in money of the entire property of said companies within the state of Ohio, in the proportion which the same bears to the entire property of said company, as determined by the value of the capital stock thereof, and the other evidence and rules as aforesaid. Express companies shall, in making said returns, include therein, as a part thereof a statement of their entire gross receipts for the year ending the first day of May, of the business done within the state of Ohio, giving the receipts of each office in said state, and the location thereof for said year."

By section 2780b, the assessors are required to deduct from the total value of the property of said companies, as ascertained and determined by section 2778, the valuation of any and all real estate, as assessed for taxation, situate in the state, and on which said companies pay taxes.

All of the complainant companies are corporations of states other than Ohio, and each has its principal office in another state. The questions presented by each separate bill are in substance the same. For purposes of convenience, we shall consider the averments in the bill of the Adams Express Company as presenting substantially the ground for relief made by each of the other complainants. That bill avers that much the greater part of its business done in Ohio is in the transportation of goods, wares, and merchandise from points within the state to points in other states, and from points without the state to points within; that it owns no line of railroad in the state of Ohio, but conducts its business under contracts with the owners of such railroads; that it owns no real estate in the state,

except such as is used for stabling horses used by them in the collection and distribution of goods, wares, and merchandise, and that the personal property within the state consists entirely of office furniture, and tools, horses, and wagons; that the actual cash value of its personal property in the state of Ohio in 1893 did not exceed the sum of $53,500, and that the total value of its real estate within the state does not exceed $25,170, and that all taxes on this real property have been paid; that the assessment for 1893 made against the said company was $460,033.38; that the whole number of shares in the said company is 120,000, and that the market value of the shares ranged during the year preceding from $1.40 to $1.50 upon the dollar, a price which the bill avers is greatly in excess of the actual value of all the property of said company. It avers that the scheme of taxation set forth in the act, "while professing to require the taxation of property in the state of Ohio, does not in fact do so, inasmuch as it directs the said board of appraisers and assessors, in ascertaining and assessing the value of the property of express companies in Ohio, to be 'guided by' and to 'determine the value' of the company's property in the said state 'by the value of the company's capital stock.'" It also alleges that the value of its capital is fixed and determined by the nature, extent, and uses of its property, not only in Ohio, but in many other states of the United States, and by the skill, diligence, fidelity, and success with which its business is conducted in all these states; that it employs many thousands of men, who are constantly engaged as messengers in carrying goods, wares, and merchandise from one part of the country to another, and otherwise, and that its income is largely the result of their efforts; that it "owns valuable securities of other companies, and holds valuable contracts and business arrangements with other corporations, and all of these, none of which are held and owned in the state of Ohio, and many of them not taxable at all, together with the good will which it has earned in the course of more than fifty years of service to the public in said business, go to make up the value of the shares of its capital." It further complains that the act does not provide a method for taxation of property according to its true value in money, "but is really an attempt to enforce against express, telegraph, and telephone companies the payment of a tax for the privilege of doing business within the said state by placing a fictitious value upon their property"; "that the said pretended law is a tax upon interstate commerce, inasmuch as it attempts to establish an artificial and fictitious basis for the valuation for taxation of the property of your orator in this state, a valuation which is determined by the value of its property in other states and by reference in part to its earnings and gains in this state from business which is largely interstate;" that, in making the assessment complained of, the assessors "were guided by the value of one share of your orator's capital, and in all other respects as directed by the act." In conclusion, the bill avers that the method of taxation is unfair, unjust, and unequal, "inasmuch as it requires your orator to pay taxes in Ohio upon property situated in other states, upon which it pays taxes according to its value, and upon its gains and earnings in localities

outside of the state of Ohio, in which its gains and earnings are very much larger than those derived from an equal number of miles of line operated by it in Ohio."

By amendment, the minutes of the board and an affidavit of E. W. Poe, one of the board, and a defendant, were incorporated as parts of the bill. From these it appears that the complainants had actual notice of the meetings of the board, appeared and explained their returns, and were heard by counsel; that, in the testimony of the agents of complainants, information as to the character in detail of the property of these companies in the state, and the character of the business done, was laid before the board; and that supplementary statements were filed (not under oath) showing that the total value of the real estate of the Adams Express Company was $3,050,272.47, and of the personalty $1,034,481.43, and that the total value of the real estate of the American Express Company was $4,956,585.63, and of its personalty $1,742,402.04. No statement as to the total value of the realty or personalty of the United States Express Company was given. By schedules filed, the value of the personal property at each office in the state was given, and the gross receipts from business done in the state at each office was also shown. This affidavit further sets out that:

"In the statement of the Adams Express Company were included reports from 363 offices. From two of these offices the personal property was returned at a value of less than $1; from 72 offices the personal property in each instance was returned at a value of over $1; from 51 offices the personal property was returned at a value of over $1, and under $2. Thus, from 125 offices of the Adams Express Company the personal property was returned at less than $2. In the statement of the American Express Company there were reports from 302 offices, and from but 46 of these offices was there any return of personal property. In the statement of the United States Express Company there were reports from 417 offices, and from only 95 of these offices were there any returns of personal property. Neither of the express companies made any return of safes, pouches, or other personal property, or the value thereof, used on the railroad lines in this state in the transaction of its business. In arriving at the value of the property of these express companies taxable in Ohio, the board did not follow any fixed rule, except the rule that property in Ohio is ordinarily taxed at not more than two-thirds of its actual value, and the law governing this board. The board considered the facts, already stated, set out in the returns and supplementary statements, and also other facts in said returns and in the testimony of the authorized agents of the companies who appeared before the board. For purposes of comparison, the board examined the gross receipts returned by these companies in preceding years. Taking all the information the board had or could secure, the value of the capital stock of the company, its gross receipts within Ohio, the return of the personal property made, and the character thereof, and evidence of undervaluations and omissions therein, the number of officers, the amount of business done, the nature and value of the property and capital required to carry on such business, and other evidence and information, the board, in each instance, ascertained what it considered the fair proportion of the property of the company employed by it in Ohio, and fixed the value of the property of such company situate and taxable therein; being guided, in determining the value of the property, by the value of the entire capital stock, and other evidence and information before the board."

There is no ground for complaint that the assessments were made without due process of law. The complainants had notice of the time and place where the board would meet, and were required to

make a sworn return of their property. The time and place were fixed by the law, and its sessions were not secret. In State v. Jones, heretofore cited, the supreme court of Ohio construed the act as entitling the companies "to be present and explain the statement rendered of its property and the value thereof." They did, in fact, appear, and offered evidence, and were heard by counsel. This right to appear and be heard is due process. Kentucky Railroad Tax Cases, 115 U. S. 321, 6 Sup. Ct. 57; State Railroad Tax Cases, 92 U. S. 575; Railway Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114.

The act is assailed upon the suggestion that it permits and requires the assessment and valuation of property outside the state. This contention is based largely upon the theory that the law imposes upon the assessors the arbitrary duty of estimating the value of the property owned by these companies as equal to the market value of its capital stock, and the further duty of apportioning to the state of Ohio that proportion of the total capital stock which the value of its personal property in Ohio bore to the total value of its personal property wherever situated. It must be confessed that the principal rule of assessment has been most obscurely drawn. Whether this was done that it might be read one way by the assessors and another by the courts is somewhat problematical. But the act in its most important feature has been construed by the supreme court of Ohio in State v. Jones, and that construction must be now read into the act, and accepted as conclusive as to its meaning by this court. That court, upon this point, said: '

"The board, in determining the value of the company's property in this state for taxation, is not required to fix the value of such property upon the principle that the value of the entire property of the company shall be deemed the same as the value of its entire capital stock, thus making the respective values equivalents of each other. But, taking the market value of the entire capital stock as a datum, the board is to be only guided thereby in ascertaining the true value in money of the company's property in this state. The statute does not bind the board to find the value of the entire property of the company equal to that of the entire capital stock. While the value of the property may be less, there may be cases, and not uncommon, in which the value of the property will exceed the market value of the capital stock."

The value of its capital stock under the act, as thus construed, was but one of the factors to be looked to in estimating the total value of the property owned by the companies. The board might conclude, on all the evidence, that the property was of a greater or less value than its capital stock, and there is nothing in the act which arbitrarily requires the assessors to ignore "the other evidence" which the law contemplated they would look to, and find according to the fact. As construed by the Ohio court, the act required the assessors to ascertain the value of the property of all the companies to be assessed by the special board which was "within the state." In the opinion of that court, the provision of the law which required the board to regard the entire property of such companies, wherever situated, as one entire plant, and as "a dividend producing unit machine," was not obnoxious to the constitution of that state, nor to any provision of the constitution of the United States. It was also of opinion that the fundamental law of Ohio was not contravened

by treating, as elements in making up the gross value of such a unit plant, good will, business skill, contracts with railway or other carriers, and every other business consideration which contributed to the successful and profitable operation of the manifold parts of so complicated a machine. Neither was it objectionable that the value placed by the general public upon the capital stock of such companies, as indicated by sales of shares on the open market, should be looked to as a guide in fixing the total value of the property of such companies, wherever situated. That court was also of opinion that the money value of that part of this unit plant found within the state was within the taxing jurisdiction of Ohio.

Accepting, as we feel constrained to do, the opinion of the Ohio court as to the construction to be placed upon the provisions of the Ohio constitution concerning uniformity of taxation and admissible methods for assessing the property of corporations, and accepting, also, the construction of this Nichols law as settling the meaning of the legislature, we are unable to see wherein any provision of the constitution of the United States has been infringed. The law does not discriminate between domestic corporations and those of states other than Ohio. There was due process of law in the ascertainment of values. The bill does not charge any actual fraud upon the part of the assessors. Mere excessiveness of valuation, not the result of intentional or reckless willfulness, and not a consequence of a departure from the affirmative provisions of the law regulating such assessments, is not remediable by application to courts of equity. The tax imposed is not a license tax, nor a tax on the business or occupation, nor on the transportation of property through the state, nor from points within the state to points in other states, nor from points in other states to points within the state. It purports to provide for a tax upon property within the state of Ohio. Though this property is employed very largely in the business of interstate commerce, yet that does not exempt it from liability to taxation as all other property within the jurisdiction of Ohio. This proposition is too well settled to need argument. Delaware Railroad Tax, 18 Wall. 232; Western Union Tel. Co. v. Massachusetts, 125 U. S. 530–549, 8 Sup. Ct. 961; Leloup v. Port of Mobile, 127 U. S. 640–649, 8 Sup. Ct. 1380; Pullman's Palace-Car Co. v. Pennsylvania, 141 U. S. 18–23, 11 Sup. Ct. 876.

Neither does the fact that the property of the express companies was valued as a unit profit-producing plant violate any federal restriction upon the taxing power of a state within which a part of that plant is found. The value of property depends in a large degree upon the use to which it is put. If a railroad may be valued as a unit, rather than as a given number of acres of land plus so many tons of rails and so many thousand ties and a certain number of depots, shops, etc., there is no sufficient reason why the property of an express company should not be treated as a unit plant. If the state of Ohio had a right to tax the property within the state, and to assess it at its true cash value, there is no federal restriction which will prevent such property from being "assessed at the value which it has, as used, and by reason of its use." Railroad Co. v. Backus, 154 U. S. 431, 14 Sup. Ct. 1114; Western Union Tel. Co.

v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961; Pullman's Palace-Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876.

That an express company owns no line of railway, and operates no railroad, does not prevent the value of its property from being affected by the relation of each part to every other part, and the use to which a part is put as a factor in a unit business. The Pullman Car Company neither owned nor operated any line of railroad. Its cars were moved by railway carriers under contracts, yet it was not regarded as violative of any federal restriction that its property should be regarded as a unit plant, with a unit value, and the value of its property in Pennsylvania assessed in the proportion that the mileage of the roads over which its cars ran in that state bore to the total mileage covered by its entire business. Pullman's Palace-Car Co. v. Pennsylvania, cited above.

Neither is it an objection that the Ohio law required the assessors to look to the value of the capital stock of the company as a factor in arriving at the value of its whole property considered as a unit plant. In State Railroad Tax Cases, 92 U. S. 575–605, Mr. Justice Miller said:

"When you have ascertained the current cash value of the whole funded debt, and the current cash value of the entire number of shares, you have, by the action of those who above all others can best estimate it, ascertained the true value of the road, all its property, its capital stock, and its franchises; for all these are represented by the value of its bonded debt, and the shares of its capital stock."

This language is quoted with approval in Railroad Co. v. Backus, 154 U. S., 429, 14 Sup. Ct. 1114.

It may be that in a particular instance this would operate with injustice, but that it is a proper matter to be considered is not to be controverted. As construed by the Ohio court, this act does not require the assessors to find that the value of the property of such a corporation is the precise equivalent of the value of its capital stock as ascertained by the rule stated above. The board was only required to treat the value of the capital stock as a guide in ascertaining the actual value of its property.

In view of the wealth, population, and area of Ohio, it is not a violent presumption that the value of the part of such a plant within that state was in the proportion that the actual value of its tangible property in Ohio bore to the total value of all its tangible property, wherever situated. The mileage basis of apportionment has been sustained where railroads, telegraph, and sleeping-car companies were the subject of assessment for taxation. Railroad Co. v. Backus, 154 U. S. 431, 14 Sup. Ct. 1114, and other cases heretofore cited. A mileage basis was not adopted by the assessors whose action is now complained of, because the express companies failed to return the datum asked for by the assessors. Precisely what rule the assessors did adopt in apportioning the total value does not clearly appear, though the inference is strong that the distribution was made largely on the basis of the relative value of tangible property in Ohio to the total value of all the tangible property owned by the complainants.

It may be that, under exceptional circumstances, a rule of apportionment based on mileage or upon the relative value of the local tangible property as compared to the total value, or based upon gross receipts within the state as compared to total gross receipts, would be inequitable and unjust. Speaking of objections to an apportionment on a mileage basis, Mr. Justice Brewer, speaking for the court, in Railroad Co. v. Backus, 154 U. S. 431, 14 Sup. Ct. 1114, said:

"It is true, there may be exceptional cases,—and the testimony offered on the trial of this case in the circuit court tends to show that this plaintiff's road is one of such exceptional cases,—as, for instance, where the terminal facilities in some large city are of enormous value, and so give to a mile or two in such city a value out of all proportion to any similar distance elsewhere along the line of the road, or, where in certain localities, the company is engaged in a particular kind of business requiring for sole use in such localities an extra amount of rolling stock. If testimony to this effect was presented by the company to the state board, it must be assumed, in the absence of anything to the contrary, that such board, in making the assessment of track and rolling stock within the state, took into account the peculiar and large value of such facilities, and such extra rolling stock. But whether in any particular case such matters are taken into consideration by the assessing board does not make against the validity of the law, because it does not require that the valuation of property within the state shall be absolutely determined upon a mileage basis."

The valuation of the returned personal property of the Adams Express Company for 1893 was $53,500, and the assessed value as determined by the board is $460,033.08. This great increase undoubtedly casts a shadow on the action of the board. Still, the bill, including the amendments incorporating the affidavits of Auditor Poe as a part thereof, does not charge any actual fraud on the part of the board, by intentionally and deliberately placing a valuation grossly in excess of the real value, for the purpose of compelling the complainant to bear a larger share of taxation than it rightfully should. As in the case last cited, it may be said "that the most that can be made out of the bill is a complaint that the assessment is too high, because the board took into consideration property outside of the state, and gave to the property within the state a value partly deduced from that without the state." But if it was lawful to value the whole plant looking to it as a unit, and looking to the market value of the capital stock as a factor in the ascertainment of that total value, and that such a method does not contravene the constitution or law of Ohio, then it would seem to follow, in the absence of specific charges of fraud, or of a departure from the method of appraisement indicated by the law, that a court of equity is without power to relieve against a mere excessive valuation. Clearly, a court of equity will not, in the absence of fraud or violation of law, enjoin an assessment merely upon allegations of excessiveness.

What we have said as to the case made by the Adams Express Company is equally applicable to the suits of each of the other express companies, there being no material difference in the averments of the several bills. Our conclusion must be, therefore, that neither the law nor the assessment thereunder is obnoxious to either the constitution of Ohio nor any federal restriction; and the decree of the circuit court dismissing the several bills must be affirmed.